1  GERALD T. McFADDEN (SBN 87446)
   Attorney at Law
2  2366 Front Street
   San Diego, CA  92101
3  (619) 338-0507
   E-mail: gtmcfadden@hotmail.com
4
   Attorney for Defendant
5  MARTIN NUNEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. WILLIAM Q. HAYES)

| UNITED STATES OF AMERICA, | ) | Crim. Case No. 08CR0209-WQH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | STATEMENT OF FACTS AND |
| MARTIN NUNEZ. | ) | POINTS AND AUTHORITIES |
| Defendant. | ) | |
| | ) | NCD: March 3, 2008 |
| | | at 2:00 p.m. |

**I. STATEMENT OF FACTS**

The defendant, MARTIN NUNEZ, is charged with being an alien who was previously deported and who attempted to enter the United States without official permission on December 21, 2007, in violation of 8 U.S.C. § 1326; and who made a false claim of United States citizenship on that same occasion, in violation of 18 U.S.C. 911.

Some discovery has been provided to date but some remains outstanding.  Counsel requests leave to file additional substantive motions after review of additional discovery and investigation. The defendant's A file is not yet available and the tape of the deportation has just been received government counsel today.

According to discovery and subject to amplification or contradiction, the defendant was contacted by Border Protection Officers on December 21, 2007, at about 12:20 p.m.  At that time, the defendant was a passenger in a car at the Otay Mesa Port of Entry and it was suspected that the

1

1  defendant falsely claimed U.S. citizenship to an officer. The defendant was taken to a security
2  office and was searched which search nothing was found.
3        It is further reported that about 5 and ½ hours later, the defendant was given warnings, was
4  then questioned as to his citizenship and attempted entry into the United States and gave
5  incriminating responses.
6        Apparently no physical evidence was seized from the defendant.

7  **II. POINTS AND AUTHORITIES**

8    A.    DISCOVERY.
9        On February 12, 2008, defense counsel made a written request for discovery which is
10  attached hereto as Exhibit "A." The defense requests that the discovery requested in Exhibit "A"
11  be provided and that this Court enter appropriate orders under F.R.Cr.P. 16. Rule 16 proscribes the
12  minimum amount of discovery to which the parties are entitled. This Court has the power to order
13  broader discovery; including the identity of the witnesses. United States v. Cadet, 727 F.2d 1453,
14  1468-1469 (9th Cir. 1984); United States v. Sims, 637 F.2d 625, 629 (9th Cir. 1980); United States
15  v. Armstrong, 621 F.2d 951, 954-55 (9th Cir. 1980); United States v. Richter, 488 F.2d 170, 173-75
16  (9th Cir. 1973). The defense further requests that government agent rough notes be preserved and
17  made available at the time of the pretrial motion hearing.
18        The defense requests that this Court order the disclosure of the Grand Jury transcripts in
19  this case pursuant to F.R.Cr.P. 6(e)(3)(C)(i), its supervisory power, and the common-law right of
20  access to public records.
21        This request involves two separate categories of disclosure.
22        First, the defense requests a transcript of the Court's instructions or explanation regarding
23  the law governing the cases to the Grand Jury and any prosecution explanations of the law to the
24  grand jury.
25        The transcript of the instructions does not implicate any of the reasons underlying the
26  general rule of secrecy of Grand Jury proceedings. Douglas Oil Co. of Cal. v. Petrol Stops Etc.,
27  441 U.S. 211, 218-19, 99 S.Ct. 1667, 1672-73 (1979); 8 Moore's Federal Practice ¶6.05(1). A
28  need for secrecy of this aspect of the transcript or Grand Jury proceeding itself is nonexistent. As

1  the concept of particularized need is a balance of the need for secrecy and the need for disclosure, 8

2  Moore's Federal Practice ¶6.05(3), and there is no secrecy need to weigh here, disclosure should be

3  granted. Moreover, since this aspect of the Grand Jury proceeding and transcript does not

4  presently implicate any of the purposes or reasons involved in the doctrine of Grand Jury secrecy,

5  this Defendant has a common-law right of access to this aspect of the proceedings which may not

6  be denied absent specific and substantial reasons for a refusal of access. Such reasons for refusal

7  do not exist here. See, In Re special Grand Jury (For Anchorage, Alaska), 674 F.2d 778 (1982).

8       There is no secrecy interest here and such transcripts should be produced, United States v.

9  Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). In United States v. Alter, supra, involving the

10 appeal from a civil contempt adjudication stemming from a refusal to answer questions by a federal

11 grand jury, the Ninth Circuit stated:

> "Alter was entitled to know the content of the court's charges to the grand jury. The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not. *E.g.*, U.S. Judicial Conference Committee on the Operation of the Jury System, Handbook for Federal Grand Jurors 10 (1971)."

15      Finally, such transcripts could bear upon potential defense motions to dismiss.

16      It is of course possible that the Court instruction (apart from any instructions by

17 government counsel which are also requested) may be the same or similar to that involved in

18 United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002), cert. denied, 538 U.S. 934, 123

19 S.Ct. 1600 (2003) and related cases. Even if so, there are issues arising from such an instruction

20 that were not resolved in those decisions.

21      Second, defense requests the transcript of the testimony of witnesses before the Grand Jury.

22 There is of course no question that the defense is entitled to the transcript of the Grand Jury

23 testimony of a witness after such a witness's direct examination at trial. Dennis v. United States,

24 384 U.S. 855, 86 S.Ct. 1840 (1966). Most of the reasons for the secrecy of Grand Jury proceedings

25 do not exist at all after the indictment has been disclosed. To the extent that any reason for secrecy

26 is still applicable at this stage, it does not outweigh a defendant's right and interest in adequate

27 preparation for trial after the indictment has been disclosed and the defendant brought before the

28 Court – at least insofar as access to the transcript of testimony before the Grand Jury by an

individual who will be a government witness at trial.

B. <u>MOTION TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT AS OF THE TIME THE DEFENDANT WAS IN CUSTODY</u>

The defense also moves to suppress any and all statements of defendant after custody and any fruits thereof on <u>Miranda</u>, and voluntariness grounds. The typed declaration of the defendant is attached as Exhibit B and the identical handwritten signed declaration under CrimLR 47.1(g) is and will be available at the hearing.

<u>Miranda</u>

An individual is in custody when, under the circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." <u>Thompson</u> v. <u>Keohane</u>, 516 U.S. 99, __, 116 S.Ct. 457, 465 (1995).

The Government must prove that this defendant knowingly, intelligently, and voluntarily waived his rights against self-incrimination and to counsel, and must prove that the statements taken from this defendant were obtained in compliance with the defendant's Fifth and Sixth Amendment rights in the context of custodial interrogation. <u>Miranda</u> v. <u>Arizona</u>, *supra*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed. 694 (1966).

> "Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: <u>the prosecution may not use statements</u>, whether exculpatory or inculpatory, <u>stemming from custodial interrogation</u> of the defendant <u>unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination</u>. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain

4

from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." Id. at 384 U.S. at 445, 86 S.Ct. at 1612, 16 LED.2d at 706-07.  (Footnote omitted.) (Emphasis added.)

"If the interrogation continues without the presence of an attorney and a statement is taken, <u>a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.</u>  This Court has always set high standards of proof for the waiver of constitutional rights, and we re-assert these standards as applied to in-custody interrogation.  Since the <u>State</u> is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, <u>the burden is rightly on its shoulders</u>." <u>Id.</u>, 384 U.S. at 475, 86 S.Ct. at 1628.  (Citation omitted.)  (Emphasis added.)

The failure to advise the defendant that anything said "can and will" be used against you rendered the warnings given inadequate.  As the Ninth Circuit stated in <u>Collazo</u> v. <u>Estelle</u>, 940 F.2d 411, 418 (9th Cir. 1991) (*en banc*), <u>cert.</u> <u>denied</u>, 112 S.Ct. 870 (1992):

"<u>Miranda's</u> stated purpose [is] of making 'the individual more acutely aware that he is faced with a phase of the adversary system - that he is not in the presence of persons acting solely in his interest.'"

The Court referenced that part of the <u>Miranda</u> decision where the Supreme Court stated:

"<u>The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court.</u>  This <u>warning</u> is <u>needed</u> in order <u>to make him aware not only of the privilege, but also of the consequences of forgoing</u> it.  It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege.  Moreover, this <u>warning</u> may serve to <u>make the individual more acutely aware that he is faced with a phase of the adversary system--that he is not in the presence of persons acting solely in his interest.</u>" <u>Miranda</u> v. <u>Arizona</u>, 348 U.S. 436, 469 (1966).  (Emphasis added.)

Finally, the post warning questioning and statements of the defendant must be excluded under <u>Missouri</u> v. <u>Seibert</u>, 542 U.S. 600, 124 S.Ct. 2601 (2004).  This Court must suppress the post warning confession obtained during a deliberate two-step interrogation — within the meaning of <u>Seibert</u> — where the midstream <u>Miranda</u> warning was objectively ineffective to apprise the suspect of his rights.  <u>United States</u> v. <u>Williams</u>, 435 F.3d 1148, 1150, 1159 (9th Cir. Jan. 30, 2006).

<u>Voluntariness</u>.

Before a confession or any self-incriminating statement made orally or in writing is admissible in evidence, the Court must determine that the confession was given voluntarily. <u>Lego</u> v. <u>Twomey</u>, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 LED 2d 618 (1972); 18 U.S.C. §3501(a). The government bears the burden of establishing the confession's voluntariness. <u>Lego</u> v. <u>Twomey</u>, *supra*; <u>United States</u> v. <u>Jenkins</u>, 938 F.2d 934, 937 (9th Cir. 1991).

> "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker: If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." <u>Schneckloth</u> v. <u>Bustamonte</u>, 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 LED 2d 854 (1973). <u>United States</u> v. <u>Jenkins</u>, 938 F.2d 934, 938 (9th Cir. 1991).

Also "the admissibility of a confession turns as much on whether the techniques for extracting the statements ... are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne." <u>Miller</u> v. <u>Fenton</u>, 474 U.S. 104, 116, 106 S.Ct. 445, 452, 88 LED. 2d 405 (1985); <u>United States</u> v. <u>Jenkins</u>, *supra*.

In considering whether a confession is voluntary the Court must take into consideration all the circumstances surrounding the giving of the confession. <u>Schneckloth</u> v. <u>Bustamonte</u>, 412 U.S. 218, 226-27, 93 S.Ct. 2041, 2047, 36 LED. 2d 854 (1973); 18 U.S.C. §3501(b). Relevant factors include past history, education, delay, threats, and promises. An unlawful arrest is a relevant factor.

A Court must specifically consider the following five factors under 3501(b):

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

C. <u>LEAVE TO FILE FURTHER PRETRIAL MOTIONS AND FURTHER HEARING DATE</u>.

The defense requests leave to file further pretrial motions and a further hearing date as the facts are further developed and the defense has had the opportunity to review additional discovery.

### III.  CONCLUSION

For these reasons and any further reasons which come to this Court's attention prior to or at the time of the hearing of these motions, counsel respectfully requests that this Court grant these motions.

Respectfully submitted,

Dated: February 19, 2008         s/Gerald T. McFadden
                                 GERALD T. McFADDEN, Attorney for
                                 Defendant MARTIN NUNEZ
                                 E-mail:gtmcfadden@hotmail.com

Gerald T. McFadden<br>
Attorney At Law<br>
The Garrettson House<br>
2366 Front Street<br>
San Diego, California 92101-1414<br>
(619) 338-0507<br>
Fax (619) 239-5872

February 12, 2008

David Katz
Assistant U. S. Attorney
880 Front Street
Room 6293
San Diego, CA 92101-8893

Re:  USA v. Martin Nunez
     08cr0204-WQH

Dear Mr. Katz:

I acknowledge prior receipt of discovery pages 1 –64 and a post-arrest interview CD.

Would you please advise of the date and place of the removal referred to in the indictment and provide the documents relating to that event and the tape if any of the removal hearing; and, the same information and documentation as to any other exclusion, deportation and/or removal which was relied upon for the removal referred to in the indictment, or which you will introduce evidence of at trial.

Would you also please provide a copy of my client's "A" file.

Generally, please accept this letter as my request for discovery of those items covered by F.R. Crim.P. 16(a) (1) (A) - (G), and F.R. Evid. 404(b), and also specifically for those items set forth below:

1. All oral, written or recorded statements or testimony in the Government's possession, made by the defendant and codefendants, all reports related to the circumstances of such statements; and a copy of any Miranda warning form and waiver form utilized in connection with questioning of the defendant.

2. A copy or inspection of any books, papers, documents, photographs, or tangible objects obtained from or belonging to the Defendant, or which will be used in the Government's case in chief or are otherwise material to the preparation of this Defendant's defense and any and all reports relating to the circumstances under which such books, papers, documents, etc., came into the possession of the Government.

Would you please advise under F.R. Crim. P. 12(b)(4)(B) what physical evidence or observations from any searches in this case you intend to introduce into evidence.

EXHIBIT A

Page 2
AUSA David Katz
Re: U.S.A. v. Nunez
February 12, 2008

3. Disclosure of the names and identity of expert witnesses the Government intends to call at trial, their qualifications, subject of testimony, and reports; and the results of tests, examinations or experiments which are material to the preparation of this Defendant's defense or which are intended for use by the Government as evidence in chief at the trial; and a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. Pursuant to F.R.Cr.P. 16(a)(1)(G), this summary must describe the witnesses' opinions, the bases and reasons therefor, and the witnesses' qualifications.

4. A copy of or disclosure of this defendant's prior criminal record, if any; and a copy of the prior criminal records of the codefendants.

5. Disclosure of any and all prior similar crimes, wrongs or acts, if any, or convictions of a similar nature to the charge in this case, if any, which the Government may seek to rely upon or introduce as evidence at any hearing or trial in this case for any purpose including proof of knowledge or intent on the part of the Defendant, codefendants or coconspirators in this case, and the investigative reports and witnesses concerning such acts.

6. Any and all evidence in the Government's possession or which could be reasonably acquired by the Government which would be favorable to this Defendant on the issues of guilt or sentencing under the principles of Brady v. Maryland 373 U.S. 383 (1963) and Giglio v. United States, 405 U.S. 153 (1972). The defense requests any information which would tend to attenuate, exculpate, exonerate or mitigate this Defendant's involvement in the circumstances involved in the Indictment. The defense requests that you inquire of the agents and witnesses involved in the investigation and prosecution of this Indictment.

7. The identities of known unindicted accomplices, aiders and abettors, or coconspirators.

8. Please advise of any identification procedure (photographic, in person, or otherwise), and provide any documents relating thereto, involving this defendant.

9. Disclosure of whether or not there has been any electronic surveillance of this defendant or the co-defendants and/or their various premises in this case and the investigation of this case.

10. Any and all voice records, tapes, mechanical or electrical recordings, logs, records, reports, memoranda, notes, letters or directives of any electronic or other surveillance of any wire or oral communications, including pen register data, relating to this defendant or the co-defendants in this case including any such records and/or surveillance as to which a party to the conversation allegedly consented.

11. Disclosure of the prior convictions of persons whom the government intends to call as witnesses at any hearing or trial in this case.

12. The name(s) and identities of any informant(s) and/or cooperating individual(s) involved in any investigation underlying this indictment and the prosecution of this indictment and/or who

Page 3
AUSA David Katz
Re: U.S.A. v. Nunez
February 12, 2008

are witnesses to any events, incidents, or conversations relating to the alleged criminal activity underlying this indictment.

13. With respect to the informant(s) and witnesses referred to in Items No. 11 and 12, the disclosure of: (i) any and all prior convictions of the informant(s) and other government witnesses; (ii) any and all prior bad acts of the informant(s) and other government witnesses; (iii) any and all considerations given to or promises made to the informant(s) and other government witnesses; (iv) any and all advisements of potential charges or imprisonment and/or fines; (v) any and all threats made by the government or coercion applied by the government against the informant(s) and other government witnesses; (vi) any and all prior testimony of the informant(s); (vii) any and all information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the government's evidence, witnesses, and informant(s) or which could arguably lead to such records or such information, including any evidence or information tending to show the potentiality for bias on the part of government informant(s) and government witnesses, the narcotic habits of the informant(s) and government witnesses at the time of or prior to the relevant events, and/or the informant(s)' or government witnesses' personal dislike of any of the defendants in this indictment; and, (viii) the number of investigations in which the informant(s) have participated on behalf of the government, the nature of and total amount of remuneration or considerations provided to the informant(s) pursuant to such activities, and the consideration and/or remuneration provided to or promised to the informant(s) as a result of the investigation or investigations underlying this indictment.

14. The opportunity to interview any informant(s) and/or cooperating individual(s) sufficiently in advance of trial so that any further investigation which may be necessary may be accomplished without interrupting the trial itself.

15. Disclosure of transcripts of instructions to the grand jury in this case.

16. Disclosure of the transcripts of testimony of grand jury witnesses whom the government intends to call in its case in chief.

17. Disclosure of the names of the government's witnesses and their statements.

18. The review of witness files pursuant to *U.S. v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

Thank you for your cooperation.

Sincerely,

*GTM*

Gerald T. McFadden
Attorney at Law

```
Gerald T. McFadden. Esq.
State Bar No. 87446
2366 Front Street
San Diego, CA 92101
Telephone (619) 338-0507
E-mail: gtmcfadden@hotmail.com

Attorney for Defendant
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No.: 08CR0204-WQH |
| Plaintiff, ) | DECLARATION OF DEFENDANT REGARDING MOTION TO SUPRESS |
| vs. ) | NCD: March 3, 2008 |
| MARTIN NUNEZ, ) | At 2:00 P.M. |
| Defendant ) | |

I, MARTIN NUNEZ, hereby state, under penalty of perjury, that:

1. I am the defendant in 08cr0204-WQH.

2. On Dec. 21, 2007, I was detained and taken into custody at the Otay Mesa port of Entry by U.S. Border Patrol Police.

3. I was questioned and made statements regarding my attempted entry into the United States.

Dated: 2-14-08          _s/Martin Nunez__
                        MARTIN NUNEZ

EXHIBIT B