KAREN P. HEWITT
United States Attorney
DAVID L. KATZ
Assistant U.S. Attorney
California State Bar No. 141296
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5226
Facsimile No.: (619) 557-6741
David.Katz@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0204-WQH |
|---|---|---|
| Plaintiff, | ) ) ) | District Judge: Honorable William Q. Hayes Courtroom: 4 (Fourth Floor) |
| v. | ) ) | Date: March 3, 2008 Time: 2:00 p.m. |
| MARTIN NUNEZ, | ) ) | **GOVERNMENT'S RESPONSE AND** |
| Defendant | ) ) ) | **OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| | ) ) ) ) | **(1) COMPEL DISCOVERY; AND (2) GRANT LEAVE TO FILE FURTHER MOTIONS;** |
| | ) ) ) ) ) ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and DAVID L. KATZ, Assistant U.S. Attorney, hereby files its Response and Opposition to Defendant MARTIN NUNEZ's ("Defendant" or "Nunez") above-referenced motions and hereby files its Motion For Reciprocal Discovery. This Response and Opposition is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

A Complaint was filed on December 26, 2007, charging him with Attempted Entry after Deportation, in violation of Title 8, USC, Section 1326. On the same date, December 26, 2007, at his initial appearance before a federal magistrate, Gerald T. McFadden was appointed to represent Nunez. On January 10, 2008, Defendant appeared before a federal magistrate and waived time for the preliminary hearing. On January 23, 2008, a federal grand jury returned a two-count indictment against Defendant, charging him with Attempted Entry to the United States After Deportation, in violation of Title 8, USC, Section 1326(a) and (b) and False Claim to United States Citizenship, in violation of Title 18, USC, Section 911. On January 24, 2008, Nunez was arraigned on the indictment and the case was then set for a motion hearing before this court on March 3, 2008.   On February 19, 2008, Defendant filed the instant motions.   On January 3, 2008, the Government provided Defendant with 64 pages of discovery and a DVD recording of his advisal of rights and subsequent admissions. On February 21, 2008, the Government provided Defendant with a copy of the taped recording of his deportation hearing.

**II**

**STATEMENT OF FACTS**

**A.   Offense Conduct**

   1.   Defendant's Attempted Entry to the U.S.

On December 21, 2007, at approximately 12:10 p.m., Defendant Nunez entered the primary lane at the Otay Mesa Port of Entry (POE) as a passenger in a burgundy Dodge Caravan, bearing California license 5HVK865, driven by Daniela Hermozillo. Ms. Hermozillo stated that she and her passengers were headed for San Jose, California and presented a U. S. passport, containing a photo of her, to support her claim of U.S. citizen ship. She also handed to Denise Gutierrez, the Customs & Border Protection (CBP) Officer for the primary lane, some documents for her two (2) female passengers and a California ID card for Defendant, the other passenger. Officer Gutierrez walked around to the passenger side of the vehicle to question Nunez about his citizenship. Nunez, after some initial stuttering, told the inspector that he had been born in San Jose, California. Inspector Gutierrez asked Defendant if he had a birth certificate or any other document to support his claim of U.S. citizenship. Nunez said that he had

1  no such documents and that he did not have his wallet with him. He told Officer Gutierrez that he was
2  just going to help his sister, the driver, to drive up to San Jose, because it was a nine hour drive.
3  Suspecting that Defendant was making a false claim of U.S. citizenship, Officer Gutierrez referred the
4  vehicle and its occupants to secondary for further inspection. In secondary, CBP Officer Aton Williams
5  approached the Dodge Caravan and obtained further information from Defendant. Officer Williams then
6  took fingerprints from Nunez and entered those into the AFIS/IDENT computer system.

7              2. <u>Defendant Identified as Having Been Previously Deported from the U.S.</u>

8  The computer check revealed that Defendant Nunez was not only not a U.S. citizen, but had been
9  previously deported to Mexico from the U.S., through the San Ysidro Port of Entry (SYS POE), on
10 October 23, 2000, following a hearing before an immigration judge on October 17, 2000.   Nunez was
11 then placed under arrest and taken into custody.

12             3. <u>Defendant Advised of His Rights</u>

13 Defendant was advised of his Miranda rights in the Spanish language, by CBP Officers Michael
14 Pederson and Eric Neddermeyer, a process that was recorded by audio and video. Nunez indicated that
15 he understood and waived his rights, and agreed to answer questions without an attorney present.
16 Following that waiver, he admitted to having made a false claim of U.S. citizenship while in his sister's
17 car as they had just attempted to enter the United States. He said that he had been convicted, in San Jose
18 in the late 1990's, of drug possession and served almost three years in state prison in Vacaville. After
19 serving that time, he was deported to Mexico.

20 Nunez stated that he subsequently crossed back into the United States, illegally, in 2003 through
21 the SYS POE. In 2005, he stated, he was stopped for a traffic offense and subsequently turned over to
22 federal authorities. He was then prosecuted and convicted for Attempted Entry After Deportation and
23 sentenced to 30 months in custody, to be followed by one year of supervised release. After serving his
24 prison time, he was again deported to Mexico.  Since then, he had neither applied for nor received
25 permission from the U.S. Attorney General or the Department of Homeland Security to re-enter the U.S.
26 He also admitted to being born in Mexico and a Mexican citizen. for being    that earlier that day, he had
27 crossed the international border illegally in order to find employment in the U.S.
28

4. Defendant's Criminal Record

Records and a fingerprint comparison also revealed that Defendant, on March 10, 1998, was convicted in the Superior Court of Santa Clara, California, of California Penal Code ("PC") 148, False Identification to a Peace Officer; Health & Safety Code ("HSC") 11351, Possession/Purchase for sale of a narcotic controlled substance and HSC 1178, Possession of a Controlled Substance for Sale. For al of those offenses, he was sentenced to 8 months custody and 3 years probation. On November 17, 1999, in Santa Clara Superior Court, Defendant was also convicted of HSC 11378, Possession of a Controlled Substance for Sale, and sentenced to 3 years in prison.

On two occasions, December 17, 2003 and October 19, 2005, he was convicted of Vehicle Code Section 23152(B), Driving Under the Influence ("DUI") of Alcohol. For each of those DUI convictions, he received 10 days in jail and 3 years probation. Finally, on July 28, 1006, Nunez was convicted in U.S. District Court for the Northern District of California of 2 counts of Title 8, USC, Section 1325, Improper Entry by an Alien (1 count was a felony and 1 a misdemeanor). He received a total of 30 months custody for those two convictions.

5. Defendant's Immigration History

CBP Records indicated that Nunez had been previously deported on two separate occasions. On October 23, 2000, he was deported to Mexico, through the SYS POE, after a hearing before an immigration judge. He was subsequently removed to Mexico, through the Del Rio, Texas, Port of Entry, on December 14, 2007. He had neither applied for nor sought the permission of the U.S. Attorney General to re-enter the United States.

**III**

**ARGUMENT**

**A.   Motion for Discovery**

The Government has and will continue to fully comply with its discovery obligations. To date, Defendant has been provided with 64 pages of discovery and a copy of the DVD on which his waiver of rights and subsequent admissions are contained. The Government has ordered the A-File in this case, as well as the tape recording of this deportation/removal hearing before an Immigration Judge. The deportation tapes were provided to Defendant on February 21, 2008. Defense counsel has also been

4

notified that the A-File of the Defendant is currently available in the U.S. Attorney's Office, in the custody of a CBP officer, for his review. The following is the Government's response to defendant's various discovery requests.

### 1. Statements of Defendant Have Been Provided

The Government will fully comply with Federal Rule of Criminal Procedure 16(a)(1)(A) by providing defendant with his statements, including any tape or digital recordings made of defendant. The Defendant made a post-Miranda statement. The Government has provided the defendant with a report containing the general substance of his statements prior to his arrest. The Government will not, however, disclose all oral statements made by the defendant to those individuals not known to be Government Agents. See United States V. Hoffman, 794 F2d. 1429, 1431 (9th Cir. 1986) (Defendant's statements need only be disclosed if made to known Government Agent). However, those oral statements which the defendant made to unknown agents will be timely disclosed prior to trial should the Government decide to use them in its case-in-chief.

### 2. Arrest Reports, Notes and Dispatch Tapes

The Government has provided the defendant with arrest reports. The substance of relevant oral statements of the defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

Dispatch tapes, if they exist, will also be provided to defendant.

### 3. Brady Material

The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963).

### 4. Defendant's Prior Record

As noted above, Defendant has a prior criminal record. He has been supplied with all references to that conviction and subsequent arrests in reports in possession of the Government.

### 5. 404(b) Evidence

The Government has complied with Rule 16(a)(1)(B) in providing defendant with his known prior record as set forth in his "rap sheets" and prior deportations and/or removals. At this time, the Government may attempt to introduce evidence of his previous illegal re-entries following removals/deportations and occasions that he was found back in the U.S. following those removals/deportations, as 404(b) evidence. In particular, the Government will seek to admit admissions made by Defendant, concerning alienage, citizenship and prior deportation, on July 28, 2006, at the time of his plea of guilty and sentencing for two (2) counts of Improper Entry by an Alien in federal court..

### 6. Evidence Seized

The Government has, and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(C) in allowing the defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant, including photographs.

The Government, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### 7. Preservation of Evidence

The Government will preserve whatever evidence was gathered in this case.

### 8. Tangible Evidence

See Paragraph 6 above.

### 9. Evidence of Bias or Motive to Lie

The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). The Government knows of no bias, prejudice or other motivation to testify falsely or impairments of its witnesses, but will make appropriate disclosures if such information should become known. See Napue v. Illinois, 360 U.S. 264 (1959); Mooney v. Holohan, 294 U.S. 103 (1935).

The Government will provide defendant with any agreements made with witnesses it expects to call at trial.

6

10. <u>Impeachment Evidence</u>

As noted above, the Government will comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

However, under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the Government must only disclose <u>exculpatory</u> evidence <u>within its possession</u> that is <u>material</u> to the issue of guilt or punishment. <u>See</u> also <u>United States v. Gardner</u>, 611 F.2d 770, 774 (9th Cir. 1980).

Under <u>Brady</u>, the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or innocence. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); Favorable evidence includes impeachment evidence. <u>United States v. Bagley</u>, 473 U.S. 667 (1985).

Defendants are not entitled to <u>all</u> evidence known or reasonable known which is or may be favorable to the accused or which pertains to the credibility of the Government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980):

> [I]n response to a request for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

<u>Id</u>. at 774-775.

Defendant requests the Government provide the criminal record of witnesses the Government intends to call and any information relating to a criminal investigation of a witness. Although the Government will provide conviction records, if any, which could be used to impeach a witness, the Government is under no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert</u>. <u>denied</u>, 429 U.S. 1074 (1977). When disclosing such information, disclosure need only extend to witnesses the Government intends to call in its case-in-chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify. Defendants are not entitled, however, to any and all

7

evidence that a prospective witness is under investigation by federal, state or local authorities for misconduct.

### 11.  Witness Addresses

The Ninth Circuit has consistently held that the Government, in a non-capital case, is not required to produce a list of witnesses in advance of trial. United States v. Dischner, 974 F.2d 1502 (9th Cir. 1992), *citing* United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985). *See also* Weatherford v. Bursey, 429 U.S. 545 (1977) (Brady does not require that the prosecution reveal before trial the names of all witnesses who will testify unfavorably).

In United States v. Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 455 U.S. 966 (1980), the Ninth Circuit stated:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. Section 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Although the law does not require the Government to disclose witnesses in this type of case, the Government will provide the defendant with a list of witnesses prior to trial.

### 12.  Name of Witnesses Favorable to Defendant

The Government will provide defendants the name of any such witnesses should they become known to the government. The Government will not, however, provide defendant with any reports taken from individuals interviewed at the time defendant was arrested unless those reports fall within the dictates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or 18 U.S.C. § 3500. Should the Government become aware of any exculpatory information contained within any of these documents **as they pertain to the defendant**, they will be provided.

### 13.  Statements Relevant to Defense

The Government will provide defendant with any such statement should it become known to the government.

### 14.  Jencks Act Material

The Government will comply with its obligations pursuant to the Jencks Act.

15.  Giglio Information

The Government will comply with its obligations pursuant to Giglio v. United States, 405 U.S. 150 (1972).

16.  Expert Witnesses

Pursuant to Rule 16(E), the Government will timely disclose all expert witnesses it expects to call at trial along with their curriculum vitae. As of this time, the Government expects to call an employee of CBP or ICE to identify the and explain the basis for a Certificate of Non-Existence. The Government will also call an expert in fingerprint comparison for the purpose of comparing the fingerprints on the prior deportation and exclusion, with those of Defendant, to prove that Defendant is the individual who was previously deported and/or excluded from the United States to Mexico.

**B.  Defendant's Motion for Leave to File Further Motions for Leave to File Further Motions Should Be Conditionally Denied**

The Government opposes the Court's granting leave to the defendant to file further motions absent any newly discovered evidence revealed by future discovery or a change in substantive law which would justify the filing of such a motion.

## VI

## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

To date, as noted above, the United States has provided Defendant with 64 pages of discovery. The United States will continue to comply with all of its discovery obligations as additional reports and/or other discoverable material becomes available.

The Government moves the Court to order Defendants to provide all reciprocal discovery to which the United States is entitled under Rules 16(b) and 26.2. Rule 16(b)(2) requires Defendants to disclose to the United States all exhibits and documents which Defendants "intend to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for opinions of experts the defendants intend to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

9

## V
## CONCLUSION

The Defendant's motions should be granted and denied as noted in the above discussion and the Government's motion for reciprocal discovery should be granted.

DATED: February 25, 2008

                                                Respectfully submitted,

                                                KAREN P. HEWITT
                                                United States Attorney

                                                s/David L. Katz

                                                DAVID L. KATZ
                                                Assistant U.S. Attorney